Gary R. Selvin, State Bar No. 112030
E-mail: gselvin@selvinwraith.com
Elizabeth A. Doyle, State Bar No. 194536
E-mail: edoyle@selvinwraith.com
SELVIN WRAITH LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:  (510) 874-1811
Facsimile:   (510) 465-8976

Attorneys for Plaintiff
HOUSTON CASUALTY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSTON CASUALTY COMPANY, a Texas corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA DELTA MECHANICAL, INC.; PLAZA TOWERS CONDOMINIUM ASSOCIATION, INC.<br><br>  Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Houston Casualty Company ("HCC") for its Complaint for Declaratory Relief against Defendant California Delta Mechanical, Inc. ("CDM") and Defendant Plaza Towers Condominium Association, Inc. ("Plaza Towers") states:

## I.   JURISDICTION AND VENUE

1. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds $75,000, and the parties are citizens of different states, and an actual justiciable controversy exists between Plaintiff and Defendants within the meaning of 28 U.S.C. §2201 regarding the scope

1
**COMPLAINT FOR DECLARATORY JUDGMENT**                                               **CASE NO.**

1. and extent of insurance coverage provided under commercial excess liability policies issued by Plaintiff HCC to Defendant CDM for the claims alleged against it in a pending underlying construction defect action, entitled *California Delta Mechanical, Inc. v. Professional Services Corporation, Inc.*, Los Angeles County Superior Court Case No. SC126129 ("the Underlying Action").

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as the events and contracts giving rise to the claims occurred in this district and the Defendants are subject to personal jurisdiction in this district.

## II.  PARTIES

3. Plaintiff Houston Casualty Company ("Plaintiff" or "HCC") is a corporation incorporated under the laws of the State of Texas with its principal place of business in Houston, Texas, and is now, and was all relevant times herein mentioned, authorized to transact insurance business as an insurer in the State of California.

4. HCC issued two excess commercial general liability policies to CDM: (a) policy no. H15XC50451-00, in effect from April 21, 2015 to May 21, 2016; and (b) policy no. H16XC50451-01, in effect from May 21, 2016 to October 6, 2016 (collectively referred to hereafter as the "HCC Excess Policy").

5. Defendant Plaza Towers is a non-profit mutual benefit corporation, incorporated, organized and existing under the laws of the State of California, and a community interest development consisting of 84 residential condominium units and all associated common areas including but not limited to all the real property and improvements, located at, and with its principal place of business at 838 N. Doheny Drive in West Hollywood, California ("the Project").  It is a potential judgment creditor of Plaintiff under Insurance Code section 11580, and is therefore named as a defendant to bind it to any judicial determination of coverage herein.

6. Defendant CDM is a plumbing, electrical and mechanical contractor, and

was at all times herein mentioned a California corporation with a principal place of business in Mesa, Arizona. On or about April 4, 2013, CDM was hired to perform re-piping work at the Project. It is insured under Plaintiff's excess insurance policies.

## III. SUMMARY OF RELIEF SOUGHT

7. Plaza Towers' claim against CDM in the Underlying Action is for the non-covered cost to: (a) remove and replace CDM's plumbing and mechanical work at the Plaza Towers, including those costs purportedly to be incurred in the future to prevent a future failure of the system and/or future leaks, which have not occurred; (b) the costs to renovate and/or repair each of the condominium units after the walls and other finishes are torn out in order to access, remove, and replace the plumbing pipes and mechanical systems at the Project incurred to prevent a future failure and/or future leaks; and (c) associated investigative costs and attorney's fees.

8. The HCC Excess Policy issued to CDM was in effect for 18 months between April 21, 2015 and October 6, 2016. The coverage provided to CDM under the HCC Policy is limited to sums, in excess of the limits of "underlying insurance" that CDM becomes legally obligated to pay as damages because of "any injury or damage covered under the applicable 'underlying insurance'."

9. As more particularly described below, United Specialty Insurance Company ("USIC") issued the "underlying insurance" to CDM in effect during the terms of the HCC excess policies. The underlying USIC primary policy covers "property damage" that takes place during the policy period and is caused by an "occurrence." The USIC Policy excludes, pursuant to Exclusion **L. Damage to Your Work**, 'property damage' to 'your [CDM's] work,' arising out of it or any part of it and included in the 'products-completed operations hazard'." The USIC Policy also excludes, pursuant to Exclusion **m. Damage To Impaired Property Or Property Not Physically Injured**, "property damage" to "impaired property" (as defined) that has not been physically injured when such "property damage" arises out of any defect in "your product" or "your work" or is due to CDM's alleged failure to comply with the

3
**COMPLAINT FOR DECLARATORY JUDGMENT**      **CASE NO.**

standards set forth in its Subcontract.

10. HCC seeks a judicial declaration that HCC does not owe a duty to indemnify CDM for: (i) any sums awarded to Plaza Towers to remove and replace all of the piping at the Project, i.e. the cost to re-do or correct CDM's alleged faulty workmanship; (ii) any sums awarded because of "property damage" that first took place prior to or after the HCC excess policies were in effect; (iii) any sums to prevent future leaks in the piping at the Project; (iv) the costs to renovate each of the condominium units after the walls and other finishes are torn out in order to access, remove, and replace the plumbing pipes and mechanical systems at the Project to prevent future leaks; and (v) any award of attorneys' fees against CDM.

11. HCC reserves the right to seek a judicial declaration that it is not required to indemnify CDM under any and all provisions of the commercial excess liability policies issued by HCC and/or the provisions in the underlying primary layer commercial general liability policies issued by USIC that are not addressed in this Complaint.

### IV.  FACTUAL ALLEGATIONS

12. On or about April 4, 2013, the general contractor, Professional Services Corporation ("PSC"), entered into a subcontract agreement with CDM to perform re-piping work at the Project for $1,880,569.00.  CDM contends that it performed its work at the Project from approximately April of 2013 through March of 2016.

13. On March 23, 2016, CDM filed a mechanic's lien in the amount of $740,530.52 against Plaza Towers.  On July 5, 2016, CDM filed a Complaint in Los Angeles County Superior Court against PSC and the Association to foreclose on the mechanic's lien.

14. On January 9, 2017, the Association filed an Answer and a Cross-Complaint against CDM alleging causes of action for Breach of Express Warranty and Negligence.  The Association alleges that the Project renovations are defective in design and/or construction, including the plumbing, electrical, and mechanical systems

that were installed by CDM.

15. Plaza Towers contends that it is necessary to completely remove and replace the plumbing system piping work installed by CDM, and that the cost of this removal and replacement, and the associated cost to replace the interior finishes that will need to be torn out in order to gain access to and replace the plumbing system piping may exceed $10,000,000.

## V. THE HCC POLICY

16. HCC Excess Policy No. H15XC50451-00, in effect from April 21, 2015 to May 21, 2016, provides Commercial Excess Liability Coverage with limits of $10,000,000 per occurrence and a $10,000,000 aggregate limit. HCC Excess Policy No. H16XC50451-01, incepted on May 21, 2016 and was in effect until its cancellation date on October 6, 2016.

17. The HCC Excess Policy contains the following relevant terms and provisions:

**SECTION I – Excess Liability Insurance**

**1. Insuring Agreement**

    **a.** We will pay those sums in excess of the limits shown in ITEM 7 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of "injury or damage" to which this policy applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance.

    **b.** This policy is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except:

        i. We will have no obligation under this policy with respect to any claim or "suit" that is settled without our written consent;

        ii. With respect to any provisions to the contrary contained in this policy; and

        iii. Under no circumstances will the coverage available under this policy be broader than any "underlying insurance".

[…]

  **e.** We will have the right, but not the duty, to participate in the investigation, defense, and settlement of all claims or "suits" against you seeking damages because of "injury or damage" to which this policy may eventually apply. We will have the right and duty to defend such claims or "suits", including the right to appoint new or substitute counsel to represent you, after the applicable limit of insurance of the "underlying insurance" has been fully exhausted by payments covered under the "underlying insurance" in cash for judgments, settlements and any cost or expense subject to such limit for the full amount of their respective liabilities. […]

  **f.** We shall have no duty to defend any insured against any claim, "suit", or other proceeding alleging damages arising out of or related to "injury or damage" not covered by this policy.

  **g.** We may at our discretion, investigate and settle any claim or "suit" to which this policy applies.

[…]

**SECTION IV – Conditions**
[…]

 **7. Other Insurance**

  This policy is excess over, and shall not contribute with, any other valid or collectible insurance whether primary, excess, contingent or on any other basis, except other insurance written specifically to be excess over this policy.

[…]

**SECTION V - Definitions:**

[…]

 **5.** "Injury or damage" means any injury or damage covered under the applicable "underlying insurance" arising from an occurrence, offense, accident, act, error or omission or other event to which the "underlying insurance" applies.

[…]

 **8.** "Products-completed operations hazard" shall have the same meaning as set forth in the applicable "underlying insurance".

[…]

**12.** "Underlying insurance" means the policies of insurance listed in ITEM 7 of the Schedule of Underlying Insurance, including any policies that provide coverage to the insured that are part of or scheduled on the policies listed in ITEM 7, also including any self-insured retentions, retained limits and/or deductibles.

**ITEM 7 -- Schedule of Underlying Insurance**
**General Liability**

| | |
|---|---|
| Carrier: United Specialty | $1,000,000 Each Occurrence |
| Policy Number: BTO1517648 | $2,000,000 General Aggregate |
| Policy Term: 4/21/15 – 4/21/16 | $2,000,000 Products/Co. Ops. Aggregate |

## VI.  THE UNDERLYING PRIMARY USIC POLICY

18.  United Specialty Insurance Company issued two consecutive underlying commercial general liability policies (no. BTO1517648) to CDM, in effect from April 21, 2015 to April 21, 2016, and April 21, 2016 until October 6, 2016 (collectively, "the USIC Policy").  The USIC Policy provides liability insurance pursuant to form CG 00 01 12 07, as modified by several endorsements.  The pertinent provisions of the **Coverage A** Insuring Agreement of the USIC Policy are set forth below.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM – CG 00 01 12 07**

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)**  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

[…]

19. The USIC Policy contains the following exclusions and conditions:

**2. Exclusions**

This insurance does not apply to:

[…]

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

>This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

***

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

…

    **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

20. The USIC Policy also contains the following relevant Definitions:

**SECTION V – DEFINITIONS**

[…]

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

[…]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[…]

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

     **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

          **(a)** When all of the work called for in your contract has been completed.

          **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

          **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

[…]

17. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[…]

22. "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     **(2)** The providing of or failure to provide warnings or instructions.

## VII. DECLARATORY RELIEF

21. There is at present a controversy between HCC and Defendants in that HCC contends there is no coverage under the HCC Policy for the claims and/or the damages sought in the Underlying Action identified in paragraph 7. (a) through (c) above, and, therefore, HCC has no duty to indemnify CDM with respect to the alleged damages described in paragraph 7. (a) through (c) and paragraph 10. Plaintiff is informed and believes and thereon alleges that Defendants contend otherwise.

22. HCC requests this Court to declare there is no coverage under the HCC Policy for the claims and/or the damages identified in paragraph 7. (a) through (c) and paragraph 10, and therefore, that HCC has no duty to indemnify CDM in the Underlying Action with respect to these claims because:

(a) The HCC Excess Policy's coverage is limited to sums that CDM is legally obligated to pay because "property damage" that is covered under the USIC primary policy and which sums exceed the USIC primary policy limit(s);

(b) The HCC Excess Policy's coverage is limited to sums that CDM is legally obligated to pay because "property damage" that took place during the policy period(s) of the HCC Policy;

(c) Plaza Towers' claim for complete removal and replacement of all of CDM's plumbing and mechanical work at the Project does not qualify as "property damage" caused by an "occurrence";

(d) Plaza Towers' claim for the future cost to tear out and replace the interior finishes in the condominium units that will be occasioned due to work described in subparagraph (c), above, does not qualify as "property damage" caused by an "occurrence";

(e) Plaza Towers' claim for the removal and replacement of all of CDM's plumbing and mechanical work at the Project, including the costs to tear out and replace the interior finishes is excluded under Exclusion **l. Damage to Your Work** contained in the USIC Policy;

  (f) Plaza Towers' claim for the removal and replacement of all of CDM's plumbing and mechanical work at the Project, including the costs to tear out and replace the interior finishes and/or future loss of use claims, is excluded under Exclusion **m. Damage to Impaired Property or Property Not Physically Injured** in the USIC Policy; and

  (g) Plaza Towers' claim for attorneys' fees do not qualify as "damages" under California law and is excluded under the Supplementary Payments Provisions of the USIC Policy.

  23. A judicial declaration is appropriate at this time in order that HCC may ascertain its rights and duties pursuant to the HCC Excess Policy and so that the parties will be bound by the same interpretation of the HCC Excess Policy. HCC has no other adequate or speedy remedy at law, and a multiplicity of actions will be avoided by the Court determining said rights and obligations pursuant to the present action and this request for declaratory relief.

## **PRAYER**

  WHEREFORE, Plaintiff HCC prays for judgment against Defendants, and each of them, as follows:

  1. For a judicial declaration that HCC has no duty to indemnify CDM for sums it may be found liable to Plaza Towers in the Underlying Action, including those set forth in paragraphs 7 and 10 above, because such sums fall outside of the HCC Excess Policy's Insuring Agreement and/or are excluded by one or more exclusions of the USIC Policy, to which HCC follows form, as alleged above;

  2. For an award of costs; and

  3. For such other and further relief as the Court deems just and proper.

| | | |
|---|---|---|
| 1 | Dated: March 8, 2023 | SELVIN WRAITH LLP |
| 2 | | |
| 3 | | By: *s/ Gary R. Selvin* |
| 4 | | Gary R. Selvin |
| 5 | | Elizabeth A. Doyle<br>Attorneys for Plaintiff |
| 6 | | HOUSTON CASUALTY COMPANY |
| 7 | 437268.doc | |